UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEREDITH J. MILLS,

        Plaintiff,

v.                                CASE NO. 8:20-cv-241-T-24TGW

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments. Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision of the Commissioner be affirmed.

I.

        The plaintiff, who was thirty years old at the time of the administrative hearing, has an eleventh-grade education and no past relevant work (Tr. 40, 64). The plaintiff was found disabled as a child due to attention deficit hyperactivity disorder (ADHD) and awarded supplemental

security income (Tr. 103).   However, at age 18, her eligibility for benefits

was redetermined under the rules for adults (Tr. 15).   At that point, the

plaintiff alleged that she continues to be disabled due to legal blindness in

right eye; deafness in right ear; heart condition; seizures; neck and back

injuries from being hit by a car; and migraines due to the car accident (Tr.

235).   A hearing officer concluded that the plaintiff was not disabled as of

December 11, 2015 (Tr. 103–07).

The plaintiff, at her request, then received a de novo hearing

before an administrative law judge on November 6, 2018 (Tr. 142).   The

law judge found that the plaintiff had severe impairments of "right eye

blindness; history of borderline intellectual functioning; bipolar disorder;

posttraumatic stress disorder; anxiety; and attention deficit hyperactivity

disorder" (Tr. 17).   He concluded that these impairments permitted the

plaintiff to perform the full range of work at all exertional levels, but with

the following non-exertional limitations (Tr. 21):

> she can never climb vertical ladders, scaffolds,
> ropes, or at open unprotected heights; can never
> operate dangerous machinery and dangerous tools;
> is limited to activities with no more than
> monocular vision with normal vision in only one

eye; can understand and carry out simple, routine,
repetitive, unskilled job tasks; retains the ability to
make basic decisions and adjust to simple changes
in work setting; and can occasionally interact with
coworkers, supervisors, and the general public.

Based upon the testimony of a vocational expert, the law judge
found that, despite these limitations, jobs existed in significant numbers in
the national economy that the plaintiff could perform, such as Kitchen
Helper / Dishwasher; Housekeeper, Hotel Maid; Farm Worker, Fruit II; and
Cleaner, Hospital (Tr. 25).   Accordingly, the law judge decided that the
plaintiff was not disabled (id.).   The Appeals Council let the decision of the
law judge stand as the final decision of the Commissioner (Tr. 1–3).

II.

A.   In order to be entitled to supplemental security income,
a claimant must be unable "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment which
... has lasted or can be expected to last for a continuous period of not less
than twelve months."   42 U.S.C. 1382c(a)(3)(A).   A physical or mental
impairment, under the terms of the Act, is one "that results from anatomical,
physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656, 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

-4-

supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B.   The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.   See 20 C.F.R. 416.920.   The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled.   20 C.F.R. 416.920(a)(4)(i).   If not, the next inquiry (step two) is whether a claimant has a severe impairment.   20 C.F.R. 416.920(a)(4)(ii).   An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.

20 C.F.R. 416.920(c).   If there is not a severe impairment, then a claimant is deemed to be not disabled (id.).

When an impairment is severe, the next inquiry is whether the impairment meets, or equals, a listing in Appendix 1 (step three).   20 C.F.R. 416.920(a)(4)(iii).   If an impairment meets, or equals, an impairment, the claimant will be found disabled (id.).   If an impairment does not meet, or equal, a listing, the claimant's residual functional capacity is assessed.   20 C.F.R. 416.920(e).   Based upon that assessment, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work.   20 C.F.R. 416.920(a)(4)(iv).   If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.   20 C.F.R. 416.920(a)(4)(v).

### III.

In Social Security cases, I enter a scheduling order that sets out memorandum requirements (see Doc. 15).   Those requirements are intended to focus contentions and to eliminate "stream-of-consciousness" and "throw everything against the wall" arguments.   Thus, "[t]he Plaintiff

must identify with particularity the discrete grounds upon which the administrative decision is being challenged" (id., p. 2). Moreover, any such discrete challenges must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards (id.). The plaintiff is warned that "[a]ny contention for which these requirements are not met will be deemed forfeited and not evaluated" (id.).

The plaintiff purports to raise two issues. Not only are they both without merit, but they fail to comply with the memorandum requirements.

The plaintiff's first issue is stated as: "The ALJ erred in failing to include all mental impairments when evaluating mental impairments with the special technique required by the regulations" (Doc. 20, p. 8). This issue is stated at such a high level of generality that it does not tell me with particularity the ruling that she is challenging. This lack of clarity is confirmed by the fact that in her argument the plaintiff discussed the four broad areas of mental functioning that are considered at step two of the sequential analysis and are also referred to in the listing of impairments employed at step three.

Because the plaintiff's first issue does not comply with the requirement to identify the issue with particularity, that issue is forfeited. Moreover, even if the contentions regarding step two and step three that are stuck in the argument are considered adequately raised, those contentions would be unavailing.

In determining whether a mental impairment is severe at the second step of the sequential analysis, the decision-maker considers four broad areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. 404.1520a(c)(3).   These are referred to as the "category B criteria." In this case the law judge made detailed findings with respect to the plaintiff's limitations in the four broad areas (see Tr. 19–20).

The plaintiff quibbles with some of the law judge's statements in his findings.   Those criticisms are not persuasive, particularly since the plaintiff ignores the deference that is owed to the law judge's interpretation and weighing of the evidence.

However, it is not necessary to assess those objections, because in all events a mistake by the law judge at step two in evaluating the four broad areas of mental functioning would not constitute reversible error. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff had severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987). Consequently, even if the plaintiff had, in accordance with the memorandum requirements, properly raised with particularity an argument regarding the four broad areas of mental functioning at step two — which she did not — the argument would not support relief.

Similarly, the plaintiff has not shown reversible error at step three regarding the listing of impairments in Appendix 1 (which is another contention that the plaintiff did not properly raise).

A condition listed in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. 20 C.F.R. Part 404, Subpart P, Appendix 1; Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). The plaintiff bears the burden of showing that she meets, or equals, a listing. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation [416.920(d)], [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986). The plaintiff clearly has not made this demanding showing.

The plaintiff suggests that she either meets or equals listing 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopment disorders), and

12.15 (trauma- and stressor-related disorders) (Doc. 20, p. 8).   However, she does not even say whether she claims that she meets, or equals, a listed impairment.   That is significant because, as indicated, Eleventh Circuit authority sets out alternative methods for making the required showing.

Moreover, the plaintiff does not set out the criteria for each of the suggested impairments.   That violates the memorandum requirements, which demand that each discrete challenge be supported by "citations of the governing legal standards" (Doc. 15, p. 2).

Each of the four listings that are mentioned have a required showing of medical documentation in order to meet, or equal, a listing.   The plaintiff does not even mention those requirements and she has made no attempt to meet, or equal, them.   This deficiency alone is enough to defeat reliance on the listing of impairments.

The plaintiff's reference to the listings is also deficient in another critical aspect as well.   The listings require, in addition to medical documentation, a showing of one extreme limitation, or two marked

limitations, in the four broad areas of mental functioning (the category B criteria).[1]

The plaintiff does not even expressly assert that she has an extreme limitation or two marked limitations in the four broad areas of mental functioning in the paragraph B criteria. Consequently, she obviously has not made the required showing of "specific medical findings that meet the various tests" in the listing, or alternatively "medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, supra, 796 F.2d at 1353. Therefore, any claim based on the listings of impairments fails.

The plaintiff points out that the law judge "did not mention, and appears not to have considered, section 12.11" (Doc. 20, p. 8). While it is correct that the law judge did not expressly mention listing 12.11, there is no basis for thinking he did not consider it. Listing 12.11 covers neurodevelopmental disorders, which includes borderline intellectual

---

[1]With respect to listings 12.04, 12.06, and 12.15, there is also an alternative showing that can be made instead of the paragraph B criteria. This is referred to as a "paragraph C criteria." The law judge found that paragraph C criteria were not met (Tr. 20), and the plaintiff has not challenged that finding.

functioning.   20 C.F.R. Part 404, Subpart P, App. 1, 12:00B.9.b.   The law judge found that the plaintiff had a severe impairment of a history of borderline intellectual functioning (Tr. 17).   Further, he found that the plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (Tr. 19).   Thus, the law judge found that the plaintiff implicitly, if not explicitly, did not meet, or equal, listing 12.11.   That conclusion is confirmed by the fact that listing 12.11 requires a showing of one extreme limitation or two marked limitations of the paragraph B criteria, and the law judge determined that the plaintiff had no such limitations (Tr. 19–20).[2]

B.   The plaintiff's second issue is that "[t]he ALJ erred in failing to consider Plaintiff's work history when assessing her residual functional capacity."   This contention is unavailing.

_____

[2]Notably, the plaintiff violates the memorandum requirements also by including in issue 1 a discussion of some part-time jobs that the plaintiff held briefly (Doc. 20, pp. 10–12).   The memorandum requirements stated that "arguments within a properly articulated issue must relate directly to the particularized issue and shall not include unrelated contentions, observations, or comments" (Doc. 15, p. 2).   The discussions of part-time jobs did not belong in issue 1, but rather in issue 2, where they were repeated (Doc. 20, pp. 13–14).

The plaintiff did not seek employment until she was 29 (Doc. 20, p. 13). She first worked at a Subway for 18 hours before she twisted her ankle. She then worked at Surfside Coffee Company for about three weeks (id.). Next, she worked at Taco Bell for two days (id., p. 14). Her subsequent job was at Dairy Queen, where she worked less than four weeks (id.). Then she went to Burger King and worked there about four weeks (id.). She next went to another Subway to work for about one week (id.).

The plaintiff gives various reasons for not maintaining these jobs: twisting her ankle and not being taken back when she could return to work; having difficulty getting along with people; being informed by the district manager that "they were scared of her" and "did not want her to come back to work"; not being scheduled for further work without being given a reason; having problems with coworkers and managers; being terminated; being told by the general manager that "it was not working out and she should leave"; and discrimination (id., pp. 13–14; see also Tr. 801). In addition, the plaintiff reported "quitting her job at Subway and Dunkin Donuts due to having her service dogs there" (Tr. 753).

The plaintiff asserts that this work history "demonstrate[s] dramatically her inability to hold a job" (Doc. 20, p. 15). It is just as plausible that the work history shows that the plaintiff was not interested in working. After all, she did not obtain employment until she was 29. Furthermore, her reasons for leaving the jobs indicate she was not willing to have the proper attitude and put in the necessary effort to retain the job. Tellingly, on April 25, 2018, her therapist stated that the plaintiff "reported being able to work full-time with Dunkin Donuts, but then leaving because of discrimination" (Tr. 801). Since the plaintiff's characteristics reflect no conceivable basis for discrimination, that claim provides no valid basis for quitting. Moreover, her admission that she could work full-time at Dunkin Donuts negates the assertion that she does not have the ability to hold a job.

The law judge heard the plaintiff's testimony concerning the brief jobs (Tr. 57–62). The law judge accordingly concluded that the plaintiff had no past relevant work (Tr. 24). He noted that "the claimant indicated no serious problem with authority figures and denied ever being fired from a job due to social issues" (Tr. 19).

The Commissioner contends that the law judge's failure to mention these jobs was not error.    He points out that there is no requirement that the law judge refer in his decision to every piece of evidence as long as there is not simply a broad rejection of the plaintiff's alleged conditions. Mitchell v. Commissioner, Social Security Administration, 771 F.3d 780, 782 (11th Cir. 2014).    Here, the plaintiff's stated reasons for leaving jobs — assuming they are plausible — relate to her ability to interact with others. The law judge considered that ability in detail and concluded that the plaintiff had a moderate limitation in that area — but no more than that (Tr. 19).    In light of that assessment, the law judge was not required to discuss the plaintiff's brief job history in his decision.

In all events, even if it was error to fail to discuss the plaintiff's job history, that failure would be harmless error.    See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Hunter v. Commissioner of Social Security, 609 Fed. Appx. 555, 558 (11th Cir. 2015).    The plaintiff's unsuccessful job attempts involved the fast-food business.    That type of job involves frequent or constant contact with the general public, as well as coworkers.    In this case, the law judge limited the plaintiff to only

-16-

occasional interaction with coworkers, supervisors, and the general public (Tr. 21).   That restriction would eliminate fast-food work.   Under that circumstance, the law judge's failure to mention the plaintiff's fast-food job attempts is clearly harmless error.

IV.

Accordingly, I recommend that the decision should be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: DECEMBER 31, 2020.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.   28 U.S.C. 636(b)(1)(C).   Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.